SARAH HARTMAN, Adm'x, *et al.* *v.* JAMES ALLEN *et al.*

FRAUDULENT CONVEYANCE. *Deed in trust.* A conveyance in trust of all the debtor's property (realty) to secure a debt of only one-third its value, with two-and-a-half years to run before maturity, is fraudulent in law, though the creditor have no purpose except to secure his debt.

FROM GREENE.

Appeal from the Chancery Court at Greeneville. H. C. SMITH, Ch.

ROBERT M. McKEE for complainant.

H. H. INGERSOLL for defendant.

McFARLAND, J., delivered the opinion of the court.

This is an appeal from a decree of the chancellor overruling a demurrer to complainant's bill. The allegations in substance are, that some six months before the filing of the bill, to-wit, on the 21st of August, 1880, complainant, as the personal representative of William Rader, recovered two judgments against the defendant, James Allen, in the aggregate for something more than $1,000, upon which executions had been issued and returned *nulla bona*, on the 2d of March, 1881.

On the 27th of January, 1881, said Allen conveyed to D. R. Britton, as trustee, two tracts of land, worth in the aggregate $15,000, to secure to the defendant, B. F. Ernest, the payment of two notes, of date the 26th of January, 1881, one payable to him as administrator of Peter Ernest, deceased, for $3,453.54, the other payable to him as administrator of N. W. Ernest, deceased, for $1,015, and both due at one day. That the deed conveyed all the property legally owned by said Allen, out of which his creditors could have their debts satisfied. The deed secured no other debts except those specified to Ernest, and left unsecured, besides the debts to complainant, a security debt for more than $1,000, and another debt of about $600, and perhaps other debts. In the language of the bill, "the deed secures to said James Allen two years and six months from the date thereof, within which to pay said secured debts, and in case of failure at the expiration of the time, the trustee is to advertise and sell.

It is charged that the purpose of the defendant Allen, in the execution of the deed, was to hinder and delay complainants and his other creditors. As to Ernest, the bill says: "Complainants not being fully advised, do not now expressly charge that said Ernest had knowledge of the fraudulent purpose of James Allen, but he is required to answer on oath." And it is charged, upon the facts above stated, that the deed is fraudulent in law.

The bill was filed on the 19th of March, 1881, in less than two months after the deed was executed.

It prays that the deed be set aside and the land at once sold. The prayer of the bill, as first filed, was to have proceeds applied first to Ernest's debts, but this was amended so as to pray for priority over Ernest. The bill prays, in the alternative that the relief first prayed for cannot be granted, that Allen's interest or equity in the land be sold subject to the deed of trust, or that the cause be retained in court until the maturity of the deed of trust, and the deed then foreclosed. It is not insisted that the demurrer of the defendant Allen should be maintained. As to him, it is admitted that the bill at all events makes a case for the sale of the property subject to the deed of trust or of Allen's equity of redemption, and therefore the demurrer as to him was properly overruled.

But as to Ernest, it is argued that the bill does not charge him with a participation in the fraudulent purpose of Allen, and that it does not make a case of fraud by construction of law; that the only case made for relief is for a sale of Allen's interest in equity in the land subject to the deed, and for this purpose Ernest is not a necessary party.

There is no sufficient charge of fraud in fact against Ernest to require him to answer, but the question is, whether the bill makes a case of fraud by construction of law. The delay of two years and six months of itself would not ordinarily be regarded as unreasonable, but the bill charges that the property conveyed embraced all that the debtor legally owned, subject to his debts, and was of value more than three times the amount of the debts secured. Says the bill, one-

third of the property conveyed would have been ample security for the debts. The question is, whether a deed of trust of this character, securing to the debtor the possession of the land for two years and six months, does not necessarily hinder and delay the creditors unreasonably. Says Judge Wright, in *Doyle* v. *Smith*, 1 Cold., 21: "But it seems if there be no actual or intentional fraud, that this doctrine of legal fraud because of excessive delay in closing a trust does not necessarily apply, unless all or the greater portion of the property be included in the assurance, and unless also its value be greatly or unreasonably beyond the amount of the debt to be secured. If *these circumstances concur*, then the period of indulgence to the debtor becomes important to other creditors, because to the surplus beyond the grantee's claim they must look for satisfaction of their demands."

Similar language is used by Judge Reese, in *Bennett* v. *Union Bank*, 5 Hum., 617. He says: "If the excess in the value of the property over the debt were considerable and the time of the indulgence long, the evidence of a fraudulent purpose in the face of the instrument would become greater, and that evidence would become more and more pregnant in proportion as the excess in value were increased and the time of indulgence prolonged."

In *Mitchell* v. *Beal*, 8 Yer., 134, all the debtor's property was conveyed; it was twice the value of the debt, and the time of indulgence was three years. It was held void, but there was other evidence of fraud in that case. The possession of the property was ex-

pressly secured to the debtors for three years, and they were allowed to sell on three years' credit, with no other restrictions than to pay the proceeds to the trustees, and there were other advances by the creditors. It has been several times held that a delay equivalent to the law's delay, is not unreasonable, and in *Roane et al.* v. *The Bank of Nashville,* 1 Head, 526, it was held upon the facts of that case a delay of five years did not avoid the deed, although the property was apparently worth greatly more than the debts. It was said, however, not to be unreasonable, as the property was bound by judgments and executions to a vast amount, and the debt secured a very large one, and on the whole the security was not unreasonable.

It is difficult to see why, upon the allegations of this bill the deed in question does not necessarily hinder and delay the unsecured creditors unreasonably as to all the land embraced in the deed, beyond what would have been ample security for the debts embraced in the deed. The debtor has no other property upon which they can go. The property conveyed was worth more than three times the amount of the debts secured. The complainants ought to have the right to reach all the land not necessary to secure the trust debts, and yet because they are included in the trust deed he is delayed in this relief for two years and six months, during which time the debtor enjoys the property.

The only answer to this is, that as the trust property is land the creditor may have the debtor's interest therein sold, subject to the deed of trust, and this remedy the creditor may have at once, and, therefore

he is not hindered or delayed. If this be an adequate remedy, then the answer is sound, but it is evident that this remedy is not as effectual as if the land be unincumbered, and practically the incumbrance would generally operate to baffle and delay the debtor, and besides, upon the same theory this would be a good answer to an attack upon a deed fraudulent in fact. The defendant could say to the complainant, you are not hindered or delayed—you can sell subject to the deed.

Our conclusion is, that upon the allegations of the bill the deed of trust does, in law, operate to hinder and delay creditors. The argument for the complainant seems to concede that the defendant Ernest may, nevertheless, be entitled to priority, but of course we decide nothing as to this.

The result is, the decree of the chancellor overruling the demurrer will be affirmed, and the cause remanded. The appellant will pay the costs of this court.